United States Courts
Southern District of Texas
FILED

SEP 11 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 19CR-677 |
| | § | UNDER SEAL |
| DIANA HERNANDEZ (1), | § | |
| KATHY HERNANDEZ (2), | § | |
| HIEU "TOM" TRUONG, R.P.H. (3), | § | |
| CHARLES WALTON (4), | § | |
| PRINCE WHITE (5), | § | |
| CLINT RANDALL (6), | § | |
| DEXTER LARD (7), and | § | |
| CEDRIC MILBURN (8), | § | |
| | § | |
| Defendants. | § | |

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States, or the drug had a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations:

    a. Oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(xiii). Oxycodone, sometimes prescribed under brand names, including Roxicodone, was used to treat severe pain. Oxycodone, as with other opioids, was highly addictive.

    b. At all times relevant, and as of October 6, 2014, Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(vi). Prior to October 6, 2014, Hydrocodone was classified as a Schedule III controlled substance. Hydrocodone, sometimes prescribed under brand names including Norco, Lortab, and Vicodin, was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive.

    c. Carisoprodol, was classified as a Schedule IV controlled substance. Carisoprodol, sometimes prescribed under the brand name Soma, was a purported muscle relaxant and was highly addictive. The FDA recommends carisoprodol only for acute treatment for two to three weeks at a time.

    d. Alprazolam was a benzodiazepine classified as a Schedule IV controlled substance. Alprazolam, sold under brand name Xanax, was used to treat anxiety and panic disorder and was addictive.

    e. Promethazine with Codeine was classified as a Schedule V controlled substance, often prescribed in liquid form to treat coughs and upper respiratory symptoms. Promethazine with Codeine, as with other opioids, was highly addictive.

5. Medical practitioners, such as pharmacists, physicians, and nurse practitioners, who were authorized to prescribe, dispense, or distribute controlled substances by the jurisdiction in which they were licensed to practice, were authorized under the CSA to prescribe, or otherwise dispense or distribute, controlled substances, if they were registered with the Attorney General of

the United States. 21 U.S.C. § 822(b). Upon application by a qualifying practitioner—including pharmacies, physicians, and nurse practitioners—the Drug Enforcement Administration ("DEA") assigned a unique registration number.

6. Chapter 21 of the Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. Chapter 21 of the Code of Federal Regulations, Section 1306.06 governed the filling of prescriptions and provided: "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner."

8. All prescriptions for controlled substances must be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a).

3

9.  The Texas Prescription Monitoring Program ("PMP") was a database of all reported prescriptions for controlled substances that were issued and dispensed in Texas. The database was maintained by the Texas Department of Public Safety ("DPS") up until September 1, 2016, and thereafter by the Texas State Board of Pharmacy ("TSBP"). Pharmacies were required to report to the PMP all controlled substances dispensed, including: the patient's name, the particular controlled substance and dosage dispensed, the quantity dispensed, the number of days supplied, the prescribing physician's name, the date the prescription was issued, the dispensing pharmacy's name, the type of payment, and the date the controlled substances were dispensed.

10. TSBP Rule 291.29 related to the Professional Responsibility of Pharmacists, and instructed a pharmacist to make every reasonable effort to ensure that any prescription drug order has be issued for a "legitimate medical purpose by a practitioner in the course of medical practice."

11. TSBP Rule 291.29(c) provided reasons to suspect that a prescription may have been authorized in the absence of a valid patient–practitioner relationship or in violation of the practitioner's standard of practice, including:

   a. a disproportionate number of patients of the practitioner receive controlled substances;

   b. the manner in which the prescriptions are authorized by the practitioner or received by the pharmacy;

   c. the geographical distance between the practitioner and the patient or between the pharmacy and the patient;

   d. knowledge by the pharmacist that the patient has exhibited doctor-shopping or pharmacy-shopping tendencies.

4

12. When pharmacies obtained a pharmacy license, TSBP distributed to pharmacies a document called: *"Red Flags" Check List for Pharmacies, YOU MIGHT BE A PILL MILL IF...*, which largely mimicked TSBP Rule 291.29(f). The document identified "red flags" related to non-therapeutic dispensing of controlled substances.

## ENTITY AND DEFENDANTS

13. S&S Pharmacy, LLC, which did business as **S&S Pharmacy**, operated as an independent retail pharmacy located at 14144 Westheimer Road Suite 100, Houston, Texas 77077. **S&S Pharmacy** was formed with the Texas Secretary of State in or around August 2016. **S&S Pharmacy** registered with the DEA, and has been licensed with the TSBP, since approximately January 2018. **S&S Pharmacy** was authorized to dispense Schedule II through V controlled substances.

14. **DIANA HERNANDEZ (1)**, a resident of Harris County, Texas, owned or controlled **S&S Pharmacy**, along with **KATHY HERNANDEZ**.

15. **KATHY HERNANDEZ (2)**, a resident of Harris County, Texas, owned or controlled **S&S Pharmacy**, along with **DIANA HERNANDEZ**.

16. **HIEU TREUNG, R.P.H. (3)**, a resident of Harris County, Texas, was the Pharmacist in Charge ("PIC") at **S&S Pharmacy**. **HIEU TREUNG** filled thousands of fraudulent and illegitimate prescriptions for controlled substances from **S&S Pharmacy**, based on prescriptions.

5

17. **CHARLES WALTON (4)**, a resident of Harris County, Texas, was a crew leader who coordinated with **S&S Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit.

18. **PRINCE WHITE (5)**, a resident of Harris County, Texas, was a crew leader who coordinated with **S&S Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit.

19. **CLINT RANDALL (6)**, a resident of Harris County, Texas, was a crew leader who coordinated with **S&S Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit.

20. **DEXTER LARD (7)**, a resident of Harris County, Texas, was a crew leader who coordinated with **S&S Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit. **DEXTER LARD** had a preexisting relationship with **DIANA HERNANDEZ** and **KATHY HERNANDEZ** from their previous involvement with other pharmacies in Houston.

21. **CEDRIC MILBURN (8)**, a resident of Harris County, Texas, was a crew leader who coordinated with **S&S Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit. **CEDRIC MILBURN** had a preexisting relationship with **DIANA HERNANDEZ** and **KATHY HERNANDEZ** from their previous involvement with other pharmacies in Houston.

## COUNT 1
### Conspiracy to Unlawfully Distribute and Dispense, and Possess with Intent to Distribute, Controlled Substances
### (21 U.S.C. § 846)

22. All previous paragraphs of this Indictment are incorporated here.

23. From in or around August 2016 through in or around September 2019, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas and elsewhere, Defendants

**DIANA HERNANDEZ,
KATHY HERNANDEZ,
HIEU "TOM" TRUONG, R.P.H.,
CHARLES WALTON,
PRINCE WHITE,
CLINT RANDALL,
DEXTER LARD,** and
**CEDRIC MILBURN**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally distribute and dispense, and to knowingly and intentionally possess with intent to distribute, mixtures and substances containing a detectable amount of controlled substances, including oxycodone and hydrocodone, both Schedule II controlled substances, and other controlled substances, outside the usual course of professional practice and not for a legitimate medical purpose.

All in violation of Title 21, United States Code, Section 846.

### Purpose of the Conspiracy

24.     It was a purpose and object of the conspiracy for Defendants, and others known and unknown to the Grand Jury to unlawfully enrich themselves by, among other things: (a) distributing, dispensing, and diverting controlled substances outside the usual course of professional practice and not for a legitimate medical purpose; (b) generating large profits from distributing, dispensing, and diverting those controlled substances; and (c) diverting the proceeds from distributing and dispensing those controlled substances for their personal use and benefit.

### Manner and Means of the Conspiracy

The manner and means by which the Defendants sought to accomplish the purpose and object of the conspiracy included, among other things:

25.     **DIANA HERNANDEZ** and **KATHY HERNANDEZ** obtained a Texas Pharmacy License from the TSBP and a DEA Registration for **S&S Pharmacy**.

26.     **DIANA HERNANDEZ** and **KATHY HERNANDEZ** managed and oversaw operations at **S&S Pharmacy**.

27.     **HIEU TRUONG** maintained a Texas Pharmacist License with the TSBP.

28.     "Crew leaders," including **CHARLES WALTON, PRINCE WHITE, CLINT RANDALL, DEXTER LARD,** and **CEDRIC MILBURN** regularly and knowingly obtained illegitimate and fraudulent prescriptions for controlled substances that were not written or authorized by a physician. The prescriptions regularly listed fictitious patient names, addresses, diagnoses, and physician phone numbers.

8

29. "Crew leaders," including **CHARLES WALTON, PRINCE WHITE, CLINT RANDALL, DEXTER LARD,** and **CEDRIC MILBURN** regularly delivered illegitimate and fraudulent prescriptions to **S&S Pharmacy**.

30. **HIEU TRUONG**, in coordination with **DIANA HERNANDEZ** and **KATHY HERNANDEZ**, knowingly filled illegitimate and fraudulent prescriptions for Schedule II through V controlled substances from **S&S Pharmacy**, including oxycodone, hydrocodone, carisoprodol, alprazolam, and promethazine with codeine, among others, in exchange for cash from "crew leaders," including **CHARLES WALTON, PRINCE WHITE, CLINT RANDALL, DEXTER LARD,** and **CEDRIC MILBURN**. **HIEU TRUONG, DIANA HERNANDEZ,** and **KATHY HERNANDEZ** often charged over $1,000 to dispense just one oxycodone prescription, and over $400 to dispense just one hydrocodone prescription, well over market value for legitimate prescriptions.

31. The prescriptions **HIEU TRUONG** filled at **S&S Pharmacy** were almost always for oxycodone 30mg, hydrocodone 10mg, and carisoprodol 350mg—the highest dosage strengths of hydrocodone and carisoprodol, and the highest short-acting dosage strength of oxycodone. **KATHY HERNANDEZ** and **DIANA HERNANDEZ** ordered these high-strength controlled substances from multiple drug distributors.

32. **HIEU TRUONG, DIANA HERNANDEZ,** and **KATHY HERNANDEZ's** management, operation, and dispensing at **S&S Pharmacy** exhibited many, if not all, of the pill-mill Red Flags warned against by TSBP.

33. Thousands of prescriptions were forged, stolen, written, and filled by Defendants and their co-conspirators, known and unknown to the grand jury, outside the course of professional practice and not for a legitimate medical purpose.

34. **DIANA HERNANDEZ and KATHY HERNANDEZ** deposited much of the cash proceeds into bank accounts, often breaking up the deposits to avoid banks' federal reporting requirements. From on or around August 20, 2018, to on or around July 31, 2019, **DIANA HERNANDEZ and KATHY HERNANDEZ** deposited more than approximately $1,700,000 in cash. Some of that money was used to purchase more controlled substances from wholesalers, for distribution to "crew leaders," including **CHARLES WALTON, PRINCE WHITE, CLINT RANDALL, DEXTER LARD**, and **CEDRIC MILBURN**.

35. From in or around March 2018 through in or around September 2019, **S&S Pharmacy** filled approximately 8,000 controlled substance prescriptions, dispensing more than approximately 700,000 controlled substance pills—including more than 100,000 pills of oxycodone 30mg, more than 375,000 pills of hydrocodone 10mg, more than 150,000 pills of carisoprodol 350mg, and more than 80,000 pills of alprazolam 2 mg, the vast majority of which were for no legitimate medical purpose and outside the course of professional practice.

All in violation of Title 21, United States Code, Section 846.

### COUNTS 2–4
**Unlawfully Distributing and Dispensing, and Possessing with Intent to Distribute, Controlled Substances; and Aiding and Abetting**
**(21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2)**

36. The allegations in paragraphs 1 through 21 and 23 through 35 of this Indictment are incorporated here.

37. On or about the dates specified below, in the Houston Division of the Southern District of Texas, the Defendants specified below, aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally distribute and dispense, and did knowingly and intentionally possess with intent to distribute, outside the usual course of professional practice and not for a legitimate medical purpose, the controlled substances alleged below:

| Count | Defendants | On or about date | Controlled Substances | "Prescriber" | Approx. Pill Count |
|---|---|---|---|---|---|
| 2 | DIANA HERNANDEZ, KATHY HERNANDEZ, HIEU "TOM" TRUONG, R.P.H., CHARLES WALTON | March 26, 2019 | Hydrocodone 10 mg | Dr. T.R. | 480 |
| 3 | DIANA HERNANDEZ, KATHY HERNANDEZ, HIEU TRUONG, R.P.H., PRINCE WHITE | July 23, 2019 | Hydrocodone 10 mg | Dr. J.D. | 600 |
| 4 | DIANA HERNANDEZ, KATHY HERNANDEZ, HIEU TRUONG, R.P.H., CLINT RANDALL | July 23, 2019 | Hydrocodone 10 mg | Dr. J.D., Dr. E.E. | 600 |

All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

(Continued on next page)

## NOTICE OF CRIMINAL FORFEITURE
## (21 U.S.C. § 853(a))

38. Pursuant to Title 21, United States Code, Section 853(a), the United States of America gives notice to Defendants,

**DIANA HERNANDEZ,
KATHY HERNANDEZ,
HIEU "TOM" TRUONG, R.P.H.,
CHARLES WALTON,
PRINCE WHITE,
CLINT RANDALL,
DEXTER LARD,** and
**CEDRIC MILBURN**

that upon conviction of an offense in violation of Title 21, United States Code, Sections 841 or 846, the following is subject to forfeiture:

    a. all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and

    b. all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

## PROPERTY SUBJECT TO FORFEITURE

39. Defendants are further notified that the property subject to forfeiture includes, but is not limited to, the following:

    a. $66,967.74 seized from BBVA ClearChoice Premium Business Checking Account *8242;

    b. $65,241.64 seized from Prosperity Account *4860;

    c. $50,000 seized from BBVA Compass Business Money Market Account *6715; and

    d. $26,020 in US Currency seized by law enforcement.

## Money Judgment and Substitute Assets

40. The United States will seek the imposition of a money judgment against each Defendant upon conviction.

41. Defendants are notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendants up to the amount of the money judgment against that Defendant.

A TRUE BILL

Original Signature on File

FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

ALLAN MEDINA
ACTING CHIEF, HEALTH CARE FRAUD UNIT
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

DEVON HELFMEYER
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE